## Upper Chichester Township Election

*Norman Snyder*, for petitioner.

*Guy W. Davis*, for Charles J. Gallagher.

*Edward H. P. Fronefield,* assistant county solicitor, for Delaware County Board of Elections.

*Basil C. Clare*, for Roy Badger.

SWENEY, J., December 18, 1947.—The general election was held on November 4, 1947, and, on November 24, 1947, 25 electors of the Township of Upper Chichester, this county, presented their petition to this court, praying that leave be given them to contest the election for township commissioner and that Joseph Erner should be declared elected; a rule was issued by the court (MacDade, P. J.) to Charles J. Gallagher, a candidate for election as township commissioner and December 5, 1947, was fixed for hearing. A bond was filed, after approval by the court (MacDade, P. J.).

On December 5, 1947, the case was assigned to Sweney, J., to take testimony. A petition was, at that time, presented by Roy Badger, an unsuccessful can-

didate for township commissioner, who desired to intervene. No bond was filed and no order permitting the intervention was signed by the court.

Briefs were submitted by the parties and the matter was argued before the court en banc on December 12, 1947.

In accordance with the Pennsylvania Election Code of June 3, 1937, P. L. 1333, sec. 1773, 25 PS § 3473, we find the following facts:

1. On November 4, 1947, the qualified electors of the Township of Upper Chichester, this county, were required to elect three township commissioners.

2. The names of three candidates appeared on the Republican ticket and, in the order of their appearance on the voting machine, were Charles J. Gallagher, Joseph Harper and Roy Badger.

3. The names of three candidates appeared on the Democratic ticket and, in the order of their appearance on the voting machine, were Joseph Erner, Charles Gallagher and Wesley Nickles.

4. The election returns for said office are as follows:

| | |
|---|---|
| Charles J. Gallagher, Republican | 406 votes |
| Joseph Harper, Republican | 390 votes |
| Charles Gallagher, Democrat | 379 votes |
| Joseph Erner, Democrat | 378 votes |
| Roy Badger, Republican | 377 votes |
| Wesley Nickles, Democrat | 325 votes |

5. Charles J. Gallagher, Republican, and Charles Gallagher, Democrat, are one and the same person.

6. On the basis of the returns, the county board of elections issued certificates of election to Charles J. Gallagher, Joseph Harper and Charles Gallagher as duly elected township commissioners.

7. The certificate of Charles J. Gallagher and the certificate of Charles Gallagher were mailed by the county board of elections to the same address; to wit, to the place of residence of Charles J. Gallagher.

8. Joseph Erner has complied with the provisions of the Election Code, has filed properly his petition and bond and is legally before the court.

9. Roy Badger has not complied with the provisions of the Election Code, as to contested elections, and is not legally before the court.

10. The certificate of election issued to Charles J. Gallagher and the certificate of election issued to Joseph Harper were properly issued by the county board of elections.

Although it is clear that Roy Badger has not complied with the Election Code as to election contests, it seems that justice dictates that we should consider and decide the question which he has raised in these proceedings. Roy Badger contends that the voting machines in Upper Chichester Township were set up in such a way that a voter could vote on the Republican line or column for Charles J. Gallagher and on the Democratic line or column for Charles Gallagher, thereby voting twice for the same candidate, and as a consequence, the voting machines were so defective in their set-up as to be calculated to mislead the voters and to affect the result of the entire election. With this contention we cannot agree.

It is understood, of course, that the votes received by Charles J. Gallagher, on the Republican ticket, and Charles Gallagher, on the Democratic ticket, may not be cumulated. (Act of June 3, 1937, P. L. 1333, sec. 1406, 25 PS § 3156.) No question is raised as to the right of Charles J. Gallagher to have his name written in on the Democratic ticket at this primary election; nor is there any question about the board of election placing the name of "Charles Gallagher" on the Democratic ticket for township commissioner at the general election.

The first question raised is whether Gallagher should have filed his petition with the court, upon discovering

that he was a candidate on both tickets. Section 1406 of the Act of June 3, 1937, P. L. 1333 (25 PS §3156) provides that a candidate, who has been nominated at a primary election by more than one party for the same office under different names, *may* at any time not later than five days after certification present a petition to the court of common pleas. We do not understand the act to make it mandatory and the only penalty in the case for not filing the petition is that votes may not be cumulated.

As we see it, Gallagher might have profited had he presented such a petition. By not doing so, he took the chance that some of his friends would vote for him on the Republican ticket and some others on the Democratic ticket, and he might have been defeated thereby since his votes could not be cumulated. The important fact is that the contention that the machine was set up in such a way that a voter could vote twice for Gallagher is unavailing, since no voter could vote twice for Gallagher as a Republican or twice for Gallagher as a Democrat. Consequently, 406 Republican voters cast their votes for Charles J. Gallagher, and he was elected. There is no contest as far as Joseph Harper is concerned and he was elected also.

The next question is whether the court should direct the issuance of a certificate of election to Joseph Erner. We feel that this should be answered in the affirmative. There is nothing to prevent a voter, where three are to be elected, from voting for only one candidate; there is nothing illegal or fraudulent in such a practice. If Charles J. Gallagher had presented his petition to the court and the machine had been set up so that a voter could not have voted for Charles J. Gallagher on the Republican ticket and for Charles Gallagher on the Democratic ticket, it would have been possible for Gallagher to have won on both the Republican and Democratic tickets. Had this happened, the board of elections, knowing that Gallagher was the same

man on both tickets, would have issued certificates to the three highest in number of votes, but would have issued only one certificate to Gallagher. No one would have questioned this procedure.

An election contest is a proper place to determine the identity of candidates. In this case, it is admitted that Charles J. Gallagher and Charles Gallagher are one and the same person. If no contest had been filed, Gallagher would have appeared at the organization meeting of the commissioners and would have presented his two certificates. He would have elected to serve by virtue of one certificate and then a vacancy would exist, which would have been filled by the board.

But, an election contest calls upon the court to decide, if possible, the will of the people as expressed by their balloting. We cannot feel that the voters were misled in this matter. It is clear to us that they knew that Charles J. Gallagher and Charles Gallagher were one person. But, whether this is so or not, we feel that Joseph Erner, having received the third highest number of votes should be declared elected.

The cases of Commonwealth ex rel. McLaughlin v. Cluley, 56 Pa. 270, McLane's Appeal, 345 Pa. 228, and Derringe v. Donovan et al., 308 Pa. 469, are clearly distinguishable from the case at bar. In the Cluley case, McLaughlin was the candidate for sheriff on the opposition party; Cluley was elected but was disqualified by an act of assembly, prohibiting him from serving as sheriff within six years from his prior term. In the McLane and Derringe cases, the candidates died a day or so before the election, but were duly elected at the election; a vacancy existed by virtue of their death. In the case at bar, no vacancy exists, only the necessity to determine the identity of Gallagher and, upon discovery that Charles J. Gallagher and Charles Gallagher are one and the same person, the determination of the three highest in the voting naturally follows.

In the Election of Straban Twp. School Directors, 30 D. & C. 651, the court set aside the election because the election officials had returned erroneously "Herman Benner" instead of "Herman Beamer" as the Republican nominee for the office of school director. No such person as Herman Benner lived in the township and the court held that the voters were misled by this mistake and set aside the election.

Snodgrass' Case, 267 Pa. 494, is authority for the legal proposition that the court has the right to declare an election invalid where the identity of a contestant is in question. As we read this case, it is not authority for the proposition that the court *must* declare the election invalid.

Foy's Election, 228 Pa. 14, cannot be held in point as it is authority for the proposition that, where a candidate is adjudged by the court, in a proper proceeding, as improperly on the ballot as a candidate, he may not be declared elected where his name has been entered on the ballot contrary to said order of court.

The words of the court in Knight v. Coudersport Boro., 246 Pa. 284, 289, are applicable here:

" 'If the law declares a specified irregularity to be fatal, the court will follow that command, irrespective of their views of the importance of the requirement. In the absence of such declaration the judiciary endeavor, as best they may, to discern whether the deviation from the prescribed forms of law had or had not so vital an influence on the proceedings as probably prevented a full and free expression of the popular will'."

In Oncken v. Ewing, 336 Pa. 43, 47, the court (Mr. Justice Horace Stern) says:

"The invalidation of a public election is a judicial act of serious import, and is justified only by circumstances of the most compelling nature. Of course, there may be cases where there has been deliberate fraud on the part of election officials; or where a statute

expressly provides that certain mistakes or defects in the ballots shall invalidate the election; or where some fundamental preliminary of the election has been ignored, as in Nyce v. Board of Commissioners, 319 Pa. 353; or where, as in Kittanning Country Club's Liquor License Case, 330 Pa. 311, the form of the ballot is so lacking in conformity with the law and so confusing that the voters cannot intelligently express their intentions; in such instances it may be proper and necessary for a court to nullify an election. But where the irregularity complained of could not reasonably have misled the voters and did not result in the question at issue being presented to them unintelligibly, the election cannot be judicially overturned because of some innocuous deviation from a statutory requirement which might have been previously rectified through resort to the remedy given by the law for that purpose."

### Decree

And now, December 18, 1947, it is ordered and decreed that the certificate of election, issued to Charles Gallagher, Democrat, be, and the same is hereby cancelled and rendered void; and the Board of Elections of Delaware County, be, and is hereby, ordered to issue a certificate of election to Joseph Erner as a commissioner of the Township of Upper Chichester, County of Delaware and State of Pennsylvania.